# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BETTY MAE HANZEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 8:05CV435 |
| vs. | ) | |
| | ) | ORDER |
| LIFE CARE CENTERS OF AMERICA, INC., | ) | |
| a Tennessee corporation, and | ) | |
| CONSOLIDATED RESOURCES HEALTH | ) | |
| CARE FUND I, a Georgia Limited | ) | |
| Partnership, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' Motion for Reconsideration (#13) of the October 7, 2005 order denying defendants' motion to strike plaintiff's request for punitive damages.  Because the order was entered before defendants had the opportunity to file a reply brief, the court will reconsider the earlier ruling in light of the reply brief (#15) filed by the defendants.

Plaintiff's complaint alleges claims for negligence; negligent and/or fraudulent misrepresentations and omissions; negligent hiring, supervision and retention; and breach of contract in conjunction with the plaintiff's residence and care at Life Care Center of Elkhorn. The Elkhorn facility is owned by the defendants.  Defendant Life Care Centers of America, Inc. (LCAA) is a Tennessee Corporation with its principal place of business in Tennessee. Defendant Consolidated Resources Health Care Fund I (Consolidated) is wholly owned and operated by LCAA and is a Georgia limited partnership with its principal places of business in Tennessee and Georgia. LCCA operates nursing homes throughout the United States.  The policies, procedures, and operating decisions at all LCCA nursing homes, including the Elkhorn facility, are controlled by LCCA.  Thus, in addition to compensatory damages and costs, the plaintiff seeks an award of "punitive damages as provided by Tennessee law and Georgia law."

This court has diversity jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1332, as the action is between citizens of different states and the amount in controversy exceeds $75,000.  The defendants contend that Nebraska law is controlling on the issue of punitive damages because the plaintiff's injuries occurred in Nebraska.  Since punitive damages are not allowed under Nebraska law, defendants request an order striking plaintiff's claims for punitive damages under Tennessee and Georgia law.

Federal district courts, sitting in diversity, must apply the choice-of-law rules of the state in which the court sits. *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.), *cert. denied*, 513 U.S. 964 (1994). In choice-of-law determinations for personal injury claims, the Nebraska Supreme Court has adopted Restatement (Second) of Conflict of Laws § 146. *Malena v. Marriott Int'l, Inc.*, 264 Neb. 759, 766, 651 N.W.2d 850, 856 (2002); *see, e.g., Bryan Mem'l Hosp. v. Allied Property & Cas. Ins. Co.*, 163 F. Supp. 2d 1059, 1064 (D. Neb. 2001).

As a preliminary matter, "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'" *Malena v. Marriott Int'l*, 264 Neb. at 762-63, 651 N.W.2d at 854 (quoting *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)). *See also Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F. Supp. 1400, 1404 (N.D. Iowa 1995) ("Before any choice of law need be made, there must be a 'true conflict' between the laws of the possible jurisdictions on the pertinent issue.").

Punitive or exemplary damages are prohibited by the Constitution of the State of Nebraska. Nebraska Const. Art. VII, § 5; *Braesch v. Union Ins. Co.*, 237 Neb. 44, 58, 464 N.W.2d 769, 777 (1991); *Distinctive Printing and Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989).

Having conducted independent research, it appears that the State of Georgia does allow the recovery of punitive damages pursuant to Ga. Code. Ann. § 51-12-5.1 "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." § 51-12-5.1(b). "Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." § 51-12-5.1(c). Except in cases involving product liability claims, specific intent to cause harm, or the tortfeasor acting while under the influence of controlled substances, punitive damage awards are generally limited to a maximum of $250,000.00. *See* § 51-12-5.1(g).

References to punitive damages are liberally scattered throughout the Tennessee Code Annotated. In *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (1992), the Supreme Court of Tennessee observed, "The contemporary purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future." To avoid inviting "'extreme results that jar one's constitutional sensibilities,'" the court held that in Tennessee, "a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id*. at 900-901 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 111 S. Ct. 1032, 1055 (1991)).

A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result....  A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation.... A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances....

*Id.* at 901 (citations omitted).  Under Tennessee law, punitive damages "are to be awarded only in the most egregious of cases," and the plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence.  *Id.*

Having determined that there is an actual conflict, I turn to the Restatement (Second) of Conflict of Laws § 146, which provides:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6, in turn, provides:

(1)  A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2)  When there is no such directive, the factors relevant to the choice of the applicable rule of law include
    (a)   the needs of the interstate and international systems,
    (b)   the relevant policies of the forum,
    (c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d)   the protection of justified expectations,
    (e)   the basic policies underlying the particular field of law,
    (f)   certainty, predictability and uniformity of result, and
    (g)   ease in the determination and application of the law to be applied.

-3-

Section 145 of the Restatement further provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

    (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

These factors were thoughtfully discussed by Judge Urbom in *Fanselow v. Rice*, 213 F. Supp. 2d 1077 (D. Neb. 2002), and by Judge Bataillon in *Sanford v. Ektelon/Prince Sports Group, Inc.*, No. 8:97CV368, 1999 WL 33537914 (D. Neb., Nov. 5, 1999).

*Fanselow v. Rice* was a diversity case arising out of a motor vehicle accident that occurred in Nebraska. The plaintiffs who were injured in the accident were Colorado residents whose car collided with a tractor-trailer operated by defendant Rice while in the course and scope of his employment with co-defendant Transport America. Rice resided in Texas at the time of the accident, but resided in Oregon when the lawsuit was filed. Transport America was incorporated under the laws of Minnesota and its principal place of business was in Minnesota. Applying Nebraska law, Judge Urbom held that the law of Minnesota applied to the claims against the defendant Transport America, and the law of Oregon applied to the claims against the defendant Rice. In his analysis, Judge Urbom evaluated each § 6 factor, found most of them to be inconclusive, and decided the proper focal points of the choice-of-law inquiry were the relevant policies of Nebraska, Minnesota, and Oregon, as well as the basic policies underlying the law of punitive damages, in conjunction with the "contacts" outlined in § 145(2) of the Restatement. Noting that "[t]he stated purposes of punitive damages generally include (a) punishment or retribution, and (b) deterrence," the judge agreed that the only jurisdictions concerned with punitive damages were those with whom the defendants have contacts significant for choice of law purposes.'" *Id.* at 1084. Those jurisdictions included Nebraska, Minnesota and Oregon; however, it appeared to the court that Nebraska had "little interest in applying its punitive damages laws to a case such as this, where the only connection it has with the defendants is that it was the location of the accident giving rise to the lawsuit." *Id.* at 1085.

It seems to me ... that (1) Minnesota has an interest in punishing Transport America, and (2) both Minnesota and Oregon have an interest in deterring future

wrongdoing by their respective resident defendants. It also seems to me that these interests are greater than whatever interest Nebraska may have in prohibiting punitive damages against two non-resident defendants. In short, as the plaintiffs suggest in their reply, deterring future wrongdoing by the defendants "would most benefit" their respective states of residence, while protecting two non-resident defendants against excessive financial liability provides little benefit to Nebraska or its citizens.... I am persuaded that Minnesota and Oregon have the "most significant relationship" to the accident and the parties with respect to the issue of punitive damages.

*Fanselow v. Rice*, 213 F. Supp. 2d at 1086 (footnotes and citations omitted).

*Sanford v. Ektelon/Prince Sports Group, Inc.*, was a products liability action where the plaintiff suffered permanent injuries to his right eye while playing racquetball, when he was struck by his opponent's racquet on the right lens of protective racquetball eyewear manufactured and/or sold by the defendants. After the close of discovery, the parties filed cross-motions for summary judgment. The plaintiffs argued that Nebraska law did not govern punitive damages issues and that New Jersey law, which allows punitive damages, should be applied because New Jersey had a strong interest in allowing punitive damages. Judge Bataillon noted that "the injury occurred at the Jewish Community Center in Omaha, Nebraska. Mark Sanford is a resident of Omaha, Nebraska. His wife Vicki Sanford is a resident of Omaha, Nebraska. Ektelon is a New Jersey corporation and [codefendant] UVEX is a Rhode Island corporation. The purchase of eyewear occurred in Boston." Citing *Crossley v. Pacific Employers Insurance Co.*, 251 N.W.2d 383, 386 (Neb. 1977), the court concluded that the State of Nebraska had the most significant relationship to the accident: "Based on the contacts with the State of Nebraska, coupled with the clear mandate that Nebraska does not permit, as a matter of law and public policy, punitive damages, the Court finds that defendants' motion for summary judgment as to punitive damages should be granted." 1999 WL 33537914 at *5.

The orders in *Fanselow* and *Sanford* were both entered on motions with evidentiary submissions after the parties had the opportunity to conduct discovery, factors I find to be significant. In this case, the parties have not even exchanged initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). It is quite possible that, during discovery, the parties may uncover contracts, releases, or other documents that will resolve this issue. Furthermore, neither *Fanselow* nor *Sanford* seems to be particularly similar to the allegations alleged in the complaint at bar. Here, the alleged harm to the plaintiff occurred in Nebraska, and the State of Nebraska may have an interest in attracting out-of-state entities to conduct business in Nebraska by exempting them from possible punitive damage awards. On the other hand, the States of Tennessee and Georgia may have an equally valid interest in deterring businesses organized or incorporated in those states from committing egregious acts against their customers, wherever they may be located.

-5-

Under Fed. R. Civ. P. 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While the question now before the court is, as defendant argues, a question of law, that question should not be decided in a vacuum.  At this very early stage of the litigation, I decline to find, as a matter of law, that plaintiff's request for "punitive damages as provided by Tennessee law and Georgia law" is "redundant, immaterial, impertinent, or scandalous."

Upon reconsideration,

**IT IS ORDERED:**

1.    Defendant's Motion to Strike plaintiff's request for punitive damages is denied.

2.    The parties shall meet and confer pursuant to Fed. R. Civ. P. 26(f) and file their planning report with the court on or before **December 16, 2005**.

Pursuant to NECivR 72.2, a party may appeal this order  by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law.  **The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.**  *See* NECivR 72.2(d).

**DATED November 22, 2005.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**

-6-